UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,                           :
          Plaintiff,                           :
                                                        :
v.                                                   :
                                                        :
CARLA L. MARIN, individually and as co-              :
executor and beneficiary of the Estate of Ana        :
Beatriz Marin; PHILIP D. MARIN,                      :    **OPINION AND ORDER**
individually and as co-executor and                  :
beneficiary of the Estate of Ana Beatriz             :    18 CV 9307 (VB)
Marin; CARL F. MARIN, individually and as            :
beneficiary of the Estate of Ana Beatriz             :
Marin; ESTATE OF ANA BEATRIZ                         :
MARIN; PUTNAM COUNTY NATIONAL                        :
BANK OF CARMEL; DYKEMAN SCRAP                        :
IRON INC.; and TOWN OF SOUTHEAST,                    :
          Defendants.                          :
--------------------------------------------------------------x

Briccetti, J.:

      The United States brings this action to recover unpaid estate tax liabilities of the Estate of Ana Beatriz Marin (the "Estate") against defendants (i) Carla L. Marin, individually and as co-executor and beneficiary of the Estate; (ii) Philip D. Marin, individually and as co-executor and beneficiary of the Estate; (iii) Carl F. Marin, individually and as beneficiary of the Estate; (iv) the Estate itself; (v) Putnam County National Bank of Carmel; (vi) Dykeman Scrap Iron Inc.; and (vii) the Town of Southeast.

Now pending is the Estate, Carla Marin, and Carl Marin's (collectively, the "moving defendants") motion for partial dismissal of the amended complaint pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6). (Doc. #73).[1]

For the following reasons, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in the government's favor, as summarized below.

I.  The Estate

Ana Beatriz Marin died in November 2007, leaving behind an estate worth $7,438,485, comprising (i) twenty-nine parcels of real property with an estimated fair market value of $6,298,500, (ii) cash, notes, and mortgages worth $1,134,985, and (iii) miscellaneous personal property worth $5,000.[2] Ana Marin's handwritten will named two of her children, Carla and Philip Marin, as co-executors of the Estate.

II.  The Estate Taxes

In February 2008, while the authenticity of Ana Marin's holographic will was being disputed, the Surrogate's Court of Putnam County appointed non-party William Carlin as temporary administrator of the Estate. In August 2008, Carlin filed a tax return on behalf of the

---

[1] Initially, only the Estate and Carla Marin moved to dismiss. After those defendants' motion was fully briefed, the Court granted Carl Marin's request to join the Estate and Carla Marin's motion. (See Doc. #87). Thereafter, the Court granted the government's request to construe its opposition brief as responsive to Carl Marin's motion as well. (See Doc. #89).

[2] 28 of the Estate's properties are situated in Putnam and Dutchess Counties. The 29th property is located in Fairfield County, Connecticut.

Estate. In October 2008, the Internal Revenue Service ("IRS") assessed estate taxes of $1,869,340 against the Estate.

In conjunction with the 2008 tax return, and pursuant to 26 U.S.C. § 6166, Carlin elected to defer payment of estate tax principal. Under this election, the Estate agreed to make interest-only payments for five years, and thereafter pay the remaining tax principal and interest in up to ten annual installments. The election further required the Estate to provide the IRS either a bond or a consent to a special lien, to ensure the IRS's interest in the Estate's tax obligations was protected by collateral.

In October 2009, the Surrogate's Court issued letters testamentary to Carla and Philip Marin, appointing them co-executors of the Estate.

Following an audit, in August 2010, the IRS assessed an additional $245,060 estate tax obligation, bringing the Estate's total estate tax liability to $2,114,400.

Pursuant to the installment election, the Estate made interest-only payments from 2008 through 2012. However, the Estate defaulted by failing to make any additional payments and failing to provide the IRS a bond or special lien consent as collateral for the payment deferral. Indeed, the Estate has not made any estate tax payment since its last interest-only payment in 2012.

Beginning in October 2010, the IRS sent numerous letters to the Estate respecting its failures to make annual payments and provide a bond or consent lien to secure the IRS's interest in the Estate's tax obligation. In July 2012, the IRS notified the Estate it would process the Estate's default if the Estate continued to neglect its responsibility to provide a bond or consent lien.

The Estate failed to provide the necessary documentation. Accordingly, in January 2013, the IRS sent a formal notice to the Estate of its intent to terminate the installment payment election, and demand immediate and full payment of the Estate's tax liability.

In January 2014, Carla Marin notified the IRS that the Estate was unable to make an installment payment, and that the Estate's property did not appear to be worth the amount owed on the Estate's tax return.

In April 2014, the Surrogate's Court removed Philip Marin as co-executor of the Estate. Carla Marin then became the sole executor.

In July 2014, the IRS formally terminated the Estate's installment payment election, and thereafter filed notices of federal tax liens in Putnam and Dutchess Counties in New York, and Fairfield County in Connecticut.

On February 4, 2015, the IRS notified the Estate of its intent to levy to collect $2,504,778.31 in estate taxes, penalties, and interest, which were then due and owing.

In March 2015, Carla Marin informed the IRS that the Estate's financial condition was "very poor" and the "Estate does not have the assets to fu[ly] pay" its tax liability. (Doc. #70 ("Am. Compl.") ¶ 52) (alteration in original). Further, Carla Marin was "concern[ed]" the total value of Estate assets was insufficient to satisfy such liability. (Id.) (alteration in original). In September 2016, Carla Marin again informed the IRS that the Estate was unable to fully pay its tax liabilities.

The Estate's federal tax liability, including penalties and interest, now exceeds $2.9 million.

III. Failure to Report Income

According to interim accountings made to the Surrogate's Court in 2014 and 2017, Carla Marin reported the Estate had earned over $2 million in rental and other income since October 2009. Yet, the Estate has not filed an income tax return since 2010.

Indeed, according to Carla Marin's April 2014 interim accounting, the Estate received roughly $1.23 million in rental and mortgage income from October 2010 through January 2014. And according to Carla Marin's January 2017 interim accounting, the Estate received an additional $818,000 in income between February 2014 and December 2016.

The government alleges the Estate has continued to collect income from Estate assets, including payments on certain mortgage notes it currently holds, and has failed to report this income to the IRS.

IV. Receipt and Use of Estate Property

According to the government, upon Ana Marin's death, Carla Marin received from the Estate more than $642,000, Carl Marin more than $20,000, and Philip Marin more than $8,000, in cash, which was deposited and held in certain "in trust for," or "ITF," accounts.

In addition, both before and after receiving notice that federal estate taxes were due and owing, the Estate paid debts to certain creditors, even though such creditors allegedly did not have priority over the IRS's interest in the Estate's outstanding tax debt. For example, from October 2010 through January 2014, the Estate paid approximately $1.46 million for what is described as administrative expenses, including debts for advertising costs, bank fees, property maintenance costs and taxes, and insurance. And from February 2014 through December 2016, the Estate paid roughly $787,000 for similar administrative expenses.

The government alleges the Estate continues to use Estate funds to pay administrative expenses to creditors for debts lacking priority over the IRS's federal tax liens.

In addition, the government alleges that during her tenure as an executor of the Estate, Carla Marin resided in, and used for her own personal benefit, certain Estate properties, and also used Estate funds for her own personal benefit. For example, Carla Marin's last known address is 65 Hill Road, Carmel, New York, an Estate asset. She lists her law firm's address as 1762 Route 6, Carmel, New York, also an Estate asset. According to the government, Carla Marin continues to use these properties for her own benefit.

## DISCUSSION

I. <u>Legal Standards</u>

A. <u>Rule 12(b)(1)</u>

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont</u>, 565 F.3d 56, 62 (2d Cir. 2009).[3] A cause of action "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Nike, Inc. v. Already, LLC</u>, 663 F.3d 89, 94 (2d Cir. 2011). The party invoking the Court's jurisdiction bears the burden to establish that jurisdiction exists. <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." <u>Conyers v. Rossides</u>, 558 F.3d 137, 143 (2d Cir. 2009). "However,

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

B.    Rule 12(b)(3)

In deciding a Rule 12(b)(3) motion to dismiss for improper venue, the Court must take all allegations in the complaint as true, unless challenged by defendants. U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), aff'd sub nom. McKeown v. Del. Bridge Auth., 23 F. App'x 81 (2d Cir. 2001) (summary order).[4] "When an allegation is so challenged a court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." Id. It is the plaintiff's burden to show venue is proper in the forum district. Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 735 (S.D.N.Y. 1996).

C.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

---

[4]    Defendants Carl and Philip Marin will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

7

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II. Section 3713 Personal Liability Claim

The moving defendants argue the government has failed to state a claim under 31 U.S.C. § 3713 against Carla Marin. Specifically, they contend the government has not plausibly alleged the Estate is insolvent or that Carla Marin made payments to creditors in contravention of the IRS's priority debt position. Moreover, they argue the government's claim is barred by the doctrine of collateral estoppel.

The Court disagrees.

A. Insolvency and Priority

Section 3713, commonly referred to as the federal priority statute, provides: "A claim of the United States Government shall be paid first when—the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B). "A representative of . . . an estate . . . paying any part of a debt of the . . . estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." Id. § 3713(b).

"Accordingly, by the statute's express terms, liability is imposed on a representative of a debtor, including an executor of an estate, who pays a debt of the estate to another in derogation

of the priority of debts owed to the United States, thereby rendering the estate insolvent." United States v. Coppola, 85 F.3d 1015, 1020 (2d Cir. 1996). For liability to attach, the estate's representative or executor must have knowledge of, or sufficient reason to know of, the debt owed by the estate to the United States. Id. "There is no question that taxes owed to the United States fall within the scope of . . . the statute's broad terms." Id.

The amended complaint sufficiently alleges a Section 3713 claim against Carla Marin. As co-executor and, eventually, sole executor of the Estate, Carla Marin knew of the Estate's federal tax obligations. Indeed, she corresponded with the IRS on multiple occasions respecting same. She thus had knowledge of the Estate's debt owed to the United States. See United States v. Coppola, 85 F.3d at 1020.

Furthermore, the government plausibly alleges the Estate is insolvent. Indeed, Carla Marin allegedly informed the IRS the Estate's property did not appear to be worth the Estate's outstanding tax liability, and that the Estate's financial condition was "very poor." (Am. Compl. ¶ 52). She also noted the "Estate does not have the assets to fu[ly] pay" the estate taxes. (Id.) (alteration in original).

The government also plausibly alleges Carla Marin, as executor, paid Estate debts to other creditors, over which the government held a priority interest. Put another way, the allegations of the amended complaint plausibly suggest Carla Marin remitted Estate funds to pay certain "administrative expenses"—including fuel and car payments—while the government's outstanding tax liens, which had priority over such administrative expenses, remained unpaid. (Am. Compl. ¶¶ 69, 71).

Accordingly, the government has alleged facts sufficient to withstand dismissal of its Section 3713 claim against Carla Marin.

B.  Collateral Estoppel

The moving defendants further argue the Section 3713 claim is barred by the doctrine of collateral estoppel. Specifically, they argue Surrogate's Court proceedings and decrees preclude the government from seeking to hold Carla Marin personally liable for the Estate's tax obligations to the extent she, as executor, paid debts of creditors subordinate to the IRS's priority position.

The Court disagrees.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). It applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Id. at 288–89.

The moving defendants fail to demonstrate the interim accounting proceedings in, and subsequent orders of, the Surrogate's Court have preclusive effect with respect to the relative priority of the Estate's claimed administrative expenses and federal tax obligations. This is because the Surrogate's Court proceedings considered only whether Carla Marin, as executor, "accounted for all of the monies and property of [the] estate that ha[d] come into her hands for the period of the account[ing]." (See Doc. #74-2 at 3). The relative priority of the Estate's debts was not at issue during the Surrogate's Court proceedings. In order words, the issue was not fully or fairly litigated. See Marvel Characters, Inc. v. Simon, 310 F.3d at 288. Moreover, the

government was not required during accounting proceedings to seek a determination of the relative priority of the Estate's claimed administrative expenses and federal tax obligations.

In addition, the government plausibly alleges that following the most recent Surrogate's Court accounting, which took place in 2017, Carla Marin utilized Estate funds to pay debts of creditors over which the IRS had priority. Collateral estoppel, even if applicable, would not preclude the government's claim respecting non-priority payments that allegedly occurred after the latest Surrogate's Court accounting.

Issue preclusion does not bar the government's Section 3713 claim, which shall proceed.

III.     Breach of Fiduciary Duty Claim

The moving defendants argue the government fails to allege a breach of fiduciary claim against Carla Marin.

The Court disagrees.

A claim for breach of fiduciary duty comprises three elements: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." Leighton v. Poltorak, 2018 WL 2338789, at *7 (S.D.N.Y. May 23, 2018) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011)).

A representative or executor of an estate "is the fiduciary of its creditors as well as legatees and distributees." Estate of Hollinger, 93 Misc. 2d 926, 931 (Surr. Ct. Nassau Cty. Mar. 23, 1978) (collecting cases); see also Lucas v. Tiernan, 2006 WL 4808614, at *1 (S.D.N.Y. Sept. 27, 2006); United States v. Coppola, 1994 WL 665751, at *6 (E.D.N.Y. Nov. 17, 1994) (noting an executor "owe[s] a fiduciary duty of undivided loyalty to the estate and its creditors" and "stands in a fiduciary relation to all parties interested in the estate, specifically including creditors").

11

Because executors owe fiduciary duties to estate creditors, they must act "impartially, with due respect to the rights of all creditors and may not grant [to a creditor] a preference which is contrary to" law. In re Robinson ex rel. Snell, 194 Misc. 2d 695, 700 (Surr. Ct. Nassau Cty. Feb. 5, 2003). Indeed, when the government's interest in an estate obligation has priority over other obligations of the estate, an executor's payment "made in violation of the preferential right of the United States" may amount to a breach of the executor's fiduciary duty. See Estate of Fisch, 58 Misc. 2d 193, 193 (Surr. Ct. N.Y. Cty. June 18, 1968).

Executors are also proscribed from self-dealing in estate assets; that is, an executor is "not free to distribute the Estate assets to himself . . . so long as the debts of the Estate remain[] unpaid." United States v. Coppola, 1994 WL 665751, at *6. This proscription "bar[s] not only blatant self-dealing, but also requir[es] avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466 (1989).

Here, the government plausibly states a claim against Carla Marin for breach of her fiduciary duties as executor of the Estate. First, the government alleges Carla Marin used Estate assets to pay non-priority debts prior to satisfaction of the Estate's outstanding federal tax obligation, of which she had direct knowledge, and that her breach caused the IRS to sustain monetary damages. Accordingly, the government sufficiently alleges Carla Marin breached a fiduciary duty owed to the IRS.

Second, the government sufficiently alleges Carla Marin engaged in self-dealing of Estate assets for her own personal benefit, thereby depriving the Estate of significant rental income. According to the government, Carla Marin lives in one Estate property, uses another as office space for her private law practice, and has utilized Estate assets to pay the utilities, repairs, and

other expenses respecting these properties. In short, Carla Marin allegedly used and applied, and continues to use and apply, Estate property without fair consideration for same. Such conduct, if true, amounts to a breach of fiduciary duty.

Carla Marin argues the government fails to allege she improperly applied Estate funds because administrative payments—for example, utility and repair costs—are necessary to maintain and preserve Estate assets, regardless of her use of same. This misses the mark. When an executor disregards an opportunity to collect rental income from someone else and, instead, utilizes estate property for her own benefit, such conduct obviously gives rise to a breach of fiduciary duty claim.

Carla Marin further argues her use of Estate property is not improper because under New York law title to real property passes to a decedent's heirs upon death. Yet even if Estate property passed to Carla Marin upon her mother's death, this argument ignores the most elementary concepts as regards the obligations and duties of estate executors and representatives. See Jackson v. Kessner, 206 A.D.2d 123, 127 (1st Dep't 1994) (noting "the distinction between an individual's status as fiduciary of an estate and beneficiary cannot be disregarded"). Thus, this contention is without merit.

The government's breach of fiduciary claim against Carla Marin shall proceed.

IV. Section 6324(a)(2) Transferee Liability Claim

The moving defendants argue the government fails to plead a Section 6324 transferee liability claim against Carla and Carl Marin. Relying heavily on a 1992 decision from the District of North Dakota, Carla and Carl Marin contend the Court should ignore precedent and conclude the government must first make tax assessments directly against them pursuant to 26 U.S.C. § 6901 before bringing a transferee liability claim under 26 U.S.C. § 6324(a)(2).

13

The Court is not persuaded.

When a person dies, a federal estate tax lien immediately attaches to all assets of the decedent's gross estate required to be reported as estate property. 26 U.S.C. § 6324(a)(2). Section 6324 "imposes liability on the transferees of a decedent's estate when the estate itself fails to pay its federal taxes." United States v. Geniviva, 16 F.3d 522, 524 (3d Cir. 1994) (citing 26 U.S.C. § 6324(a)(2)). Such personal liability may be imposed "to the extent of the value, at the time of the decedent's death, of [the transferred] property." 26 U.S.C. § 6324(a)(2).

A Section 6324 lien serves as security for any estate taxes that may be assessed as due, Detroit Bank v. United States, 317 U.S. 329, 300 (1943), thereby providing the government a "remedy against the beneficiaries of an estate when the estate divests itself of the assets necessary to satisfy its tax obligations." United States v. Geniviva, 16 F.3d at 524.

Section 6901, "on the other hand, permits the Government to <u>assess</u> tax liability against a transferee in the same manner as it assesses liability against the estate itself." United States v. Geniviva, 16 F.3d at 524 (emphasis added). "It is settled that the collection procedures established by § 6901 are not exclusive and mandatory but are cumulative and alternative to other methods of tax collection recognized and used prior to the enactment of § 6901 and its statutory predecessors." United States v. Warner, 1985 WL 2575, at *5 (S.D.N.Y. Sept. 18, 1985). "As a result, the prescribed procedures of § 6901 do not have necessary application to the liability imposed under § 6324." Id. Put another way, assessment "need only be timely made against the estate . . . , not against the transferee pursuant to § 6901, in order for a [Section 6324] claim against the transferee to be valid." Id.

To the extent United States v. Schneider, 1992 WL 472024 (D.N.D. June 8, 1992), holds otherwise, it is neither persuasive authority nor binding on this Court.

Thus, the motion to dismiss the Section 6324 transferee liability claim fails.

V. <u>EPTL § 12-1.1 Beneficiary Liability Claim</u>

The moving defendants argue the government fails to plead a claim against Carla and Carl Marin for liability under Section 12-1.1 of the New York Estates, Powers, and Trusts Law ("EPTL"). Specifically, they contend Carla and Carl Marin received no testamentary assets subject to governmental reach pursuant to Section 12-1.1, and that the government fails to allege the Estate is insolvent, a requirement for relief under Section 12-1.1.

The Court disagrees.

The statute states in pertinent part:

> [D]istributees and testamentary beneficiaries are liable, in an action, to the extent of the value of any property received by them as such, for the debts . . . of a decedent, the expenses of administering his estate and all taxes for which the estate is liable, which have not previously been recovered from the personal representative or from any other source.

N.Y. Est. Powers & Trusts Law § 12-1.1(a). It continues: "No liability may be imposed upon such distributees or testamentary beneficiaries . . . unless plaintiff establishes satisfactorily to the court that he cannot fully satisfy his claim." <u>Id</u>. § 12-1.1(b).

First, for reasons previously stated, the government sufficiently alleges the Estate's insolvency and inability to satisfy its federal tax obligations.

Second, the government sufficiently alleges Carla and Carl Marin received testamentary transfers of Estate assets through ITF accounts, which designated Carla and Carl Marin as beneficiaries. Indeed, according to the government, Carla and Carl Marin obtained, upon their mother's death, control of ITF accounts containing hundreds of thousands of dollars. Accordingly, the government sufficiently alleges Carla and Carl Marin received property as

15

beneficiaries of the Estate, which has yet to satisfy its estate tax obligation, now exceeding $2.9 million.

Thus, the motion to dismiss the Section 12-1.1 claim must be denied.

VI. Foreclosure Claim

The moving defendants argue the government's claim to foreclose its federal tax liens, for an order of judicial sale of Estate properties, and for the appointment of a receiver to operate and liquidate the properties, should be dismissed on various grounds. The Court addresses the defendants' contentions in turn.

A. Probate Exception to Federal Jurisdiction

Defendants first argue the Court lacks subject-matter jurisdiction over the foreclosure claim pursuant to the probate exception to federal jurisdiction, and thus the claim must be dismissed under Rule 12(b)(1).

The Court disagrees.

"The probate exception is an historical aspect of federal jurisdiction that holds probate matters are excepted from the scope of federal diversity jurisdiction." Lefkowitz v. Bank of N.Y., 528 F.3d 102, 105 (2d Cir. 2007). It "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311–12 (2006). However, "it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Id. at 312.

For example, "the probate exception does not divest a federal court of subject-matter jurisdiction unless a probate court is already exercising in rem jurisdiction over the property at the time that the plaintiff files [its] complaint in federal court." Kleeberg v. Eber, 2017 WL

2895913, at *2 (S.D.N.Y. July 6, 2017) (quoting Chevalier v. Estate of Barnhart, 803 F.3d 789, 804 (6th Cir. 2015)).

Here, the Surrogate's Court is not currently exercising custody or jurisdiction over any Estate property. That Carla Marin, as executor of the Estate, has authority to take possession of, collect rents from, and manage Estate assets, is not equivalent to Surrogate's Court custody of or control over Estate assets. Moreover, the most recent Surrogate's Court proceeding comprised an interim accounting of the Estate's income and expenses between February 2014 and December 2016. This limited proceeding, which took place years ago, hardly evidences Surrogate's Court custody of or control over Estate assets.

The probate exception does not warrant dismissal under Rule 12(b)(1) of the government's foreclosure claim.

### B. Failure to State a Claim

Next, defendants argue the foreclosure claim under 26 U.S.C. § 7403 must be dismissed under Rule 12(b)(6) because the government fails to allege the Estate owned any property when federal estate taxes were assessed.

The Court declines to dismiss the government's foreclosure claim on this basis.

Section 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. A Section 6321 lien arises at the time a tax assessment is made, not before. Id. § 6322. For this reason, an assessment tax lien under Section 6321 attaches to all as-yet undistributed estate assets upon a tax assessment, notice and demand, and a neglect or refusal to

pay. Id. § 6321.  In other words, if, at the time an assessment is made, an estate no longer owns or has an interest in certain property, such property generally may not fall within reach of a Section 6321 lien.  Id.

Here, whether the Estate or its beneficiaries owned the twenty-nine Estate properties at time of assessment is a factual determination not currently before the Court.  The allegations of the amended complaint, which the Court must accept as true, sufficiently state a Section 7403 claim to foreclose upon the government's Section 6321 estate tax lien.

In addition, under Section 6324, discussed above, a separate tax lien arises automatically upon death and attaches to all probate and non-probate assets comprising the decedent's gross estate.  26 U.S.C. § 6324(a)(1)–(2).  This occurs with or without a tax assessment, see Detroit Bank v. United States, 317 U.S. at 331, and allows the government to pursue claims against transferees of estate property to realize payment of the estate's tax obligations, United States v. Warner, 1985 WL 2575, at *5–7.  Without question, the government may seek to foreclose upon a Section 6324 estate tax lien.  United States v. Warner, 1985 WL 2575, at *1, 5–7.

Although the amended complaint fails to express Section 6324 as a basis for the government's foreclosure claim, it makes apparent the government's reliance on Section 6324 as a basis for transferee liability.  The government's Section 6324 estate tax lien pertains to any real property of the Estate that might have passed to Estate beneficiaries, including Carla and Carl Marin, at the time of Ana Marin's death.  See United States v. Geniviva, 16 F.3d at 524. Accordingly, the Court construes Section 6324 as an additional basis for the government's foreclosure claim, which seeks to "enforce [the government's] liens upon the Estate Properties." (See Am. Compl. ¶ 125).

Thus, the motion to dismiss the foreclosure claim under Rule 12(b)(6) must be denied.

C. <u>Venue</u>

Finally, defendants argue the government's foreclosure claim should be dismissed under Rule 12(b)(3) inasmuch as it relates to the Estate's real property located in Connecticut.

The Court disagrees.

Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (iii) "if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

There is no question "a substantial part of property that is the subject of the action is situated" in this district. 28 U.S.C. § 1391(b)(2). All but one of the twenty-nine Estate properties are situated in either Putnam or Dutchess County. Cases on which the moving defendants rely in support of dismissal for improper venue pre-date amendments to Section 1391 relevant here, most significantly, the "substantial part of property" language quoted above. In addition, "a substantial part of the events or omissions giving rise to" the government's claims also allegedly occurred within this district. <u>See</u> <u>id</u>.

Accordingly, venue is proper under Section 1391(b)(2).

19

## CONCLUSION

The motion to dismiss is DENIED.

By February 5, 2020, the moving defendants—the Estate of Ana Beatriz Marin, Carla L. Marin, and Carl F. Marin—shall file their answers to the amended complaint.

The Clerk is instructed to terminate the motion. (Doc. #73).

Dated: January 22, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge